UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 25-2779

WILLIAM CLYDE GIBSON, III,
*Petitioner-Appellee,*

v.

RON NEAL,
Warden
*Respondent-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division,
No. 1:23-cv-330-JMS-MG,
The Honorable Jane Magnus-Stinson, Judge.

_____

**CAPITAL CASE**

**REPLY BRIEF OF APPELLANT**

THEODORE E. ROKITA
Attorney General of Indiana

TYLER BANKS
Section Chief, Capital and Habeas Litigation

COURTNEY STATON
Supervising Deputy Attorney General

OFFICE OF INDIANA ATTORNEY
GENERAL TODD ROKITA
Indiana Government Center South-Fifth Floor
302 West Washington Street
Indianapolis, IN 46204
Telephone: (317) 234-7016
Tyler.Banks@atg.in.gov

*Counsel for Respondent-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................... iii

Argument:

    I.    Binding precedent establishes that this Court has jurisdiction ............... 2

    II.   The district court abused its discretion by granting Gibson's motion for a transport order ................................................. 7

Conclusion ............................................................. 18

Fed. R. App. P. 32(g) Word Count Certificate ........................... 19

Certificate of Service .................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Ademiju v. United States*, 999 F.3d 474 (7th Cir. 2021) ............................................. 13

*Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Loc. 374*, 175 F.3d 526 (7th Cir. 1999) ..................................................... 17

*Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003) ......................................... 14

*Ballard v. Spradley*, 557 F.2d 476 (5th Cir. 1977) ....................................................... 3

*Barnes v. Black*, 544 F.3d 807 (7th Cir. 2008) .......................................................... 3, 4

*Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010) .............................................................. 15

*Calderon v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 128 F.3d 1283 (9th Cir. 1997) ............................................................................... 14

*United States ex rel. Calhoun v. Pate*, 341 F.2d 885 (7th Cir. 1965) .......................... 6

*Christeson v. Roper*, 574 U.S. 373 (2015) ................................................................... 11

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949) ................................. 2

*Conner v. Reagle*, 82 F.4th 542 (7th Cir. 2023) ......................................................... 13

*Conroy v. Thompson*, 929 F.3d 818 (7th Cir. 2019) ................................................... 15

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) .................................................. 4

*Davila v. Davis*, 582 U.S. 521 (2017) ........................................................................... 8

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) ....................... 5

*Hardcastle v. Horn*, 368 F.3d 246 (3d Cir. 2004) ........................................................ 6

*Jackson v. Vasquez*, 1 F.3d 885 (9th Cir. 1993) ........................................................... 3

*Jones v. Lilly*, 37 F.3d 964 (3d Cir. 1994) .................................................................... 3

*Justus v. Clarke*, 78 F.4th 97 (4th Cir. 2023) ............................................................. 15

*Koon v. United States*, 518 U.S. 81 (1996) ................................................................. 16

*Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017) ......................................... 13

*Lurie v. Wittner*, 228 F.3d 113 (2d Cir. 2000) ................................................................ 6

*Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000) ............................................................ 6

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) .................................. 4, 5

*Murphy v. Keystone Steele & Wire Co.*, 61 F.3d 560 (7th Cir. 1995) ......................... 17

*Obriecht v. Foster*, 727 F.3d 744 (7th Cir. 2013) .......................................................... 13

*Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34 (1985) ........................... 2

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ................................................................................................... 2

*Ryan v. Gonzales*, 568 U.S. 57 (2013) ........................................................................ 10

*Scarbrough v. Johnson*, 300 F.3d 302 (3d Cir. 2002) ................................................. 6

*Schmid v. McCauley*, 825 F.3d 348 (7th Cir. 2016) ................................................... 11

*Shinn v. Ramirez*, 596 U.S. 366 (2022) ...................................................................... 9

*Shoop v. Twyford*, 596 U.S. 811 (2022) ................................................................*passim*

*Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2014) ..................................................... 11

*Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) ........................................................ 14

*Texas v. Graves*, 352 F.2d 514 (5th Cir. 1965) (per curiam) ..................................... 6

*United States ex rel. Tillery v. Cavell*, 294 F.2d 12 (3d Cir. 1961) ............................ 6

*Twyford v. Shoop*, 11 F.4th 518 (6th Cir. 2021) ........................................................ 3

*United States v. Andreas*, 150 F.3d 766 (7th Cir. 1998) ........................................... 17

*United States v. Barr*, 960 F.3d 906 (7th Cir. 2020) ................................................. 5

*United States v. Butler*, 58 F.4th 364 (7th Cir. 2023) ............................................... 5

*United States v. Davis*, 29 F.4th 380 (7th Cir. 2022) ................................................ 5

*United States v. Grasser*, 312 F.3d 336 (7th Cir. 2002) ............................................ 16

*United States v. Mojica*, 185 F.3d 780 (7th Cir. 1999) .............................................. 16

*United States v. Payne*, 102 F.3d 289 (7th Cir. 1996) ............................................... 17

## Statutes

28 U.S.C. § 1291 ....................................................................................... 6

28 U.S.C. § 2072(a) ................................................................................. 6

28 U.S.C. § 2072(b) ................................................................................. 6

28 U.S.C. § 2254(e)(2) ......................................................................... 9, 15

## Other Authorities

Fed. R. App. P. 22(b)(3) ....................................................................... 5, 6

## REPLY BRIEF OF APPELLANT

This Court should reverse the district court's order granting Gibson's motion for a transport order issued under the All Writs Act because transporting Gibson for additional diagnostic scans is neither "necessary or appropriate in aid of" the district court's adjudication of Gibson's argument for equitable tolling. Gibson concedes that he has already presented evidence in support of his equitable tolling claim on this precise issue. But more importantly, additional neurological scans would not help Gibson show that he is entitled to equitable tolling. The record conclusively establishes that Gibson was represented by competent and experienced habeas counsel, that his counsel made a strategic decision to wait to file Gibson's habeas petition beyond the one-year statute of limitations, and that Gibson agreed with their decision to do so.

Thus, to the extent that Gibson's cognitive abilities are relevant at all, they would only be relevant to whether he could have supervised his counsel's conduct, approved or disapproved of their strategy, and filed a petition on his own if he did indeed disagree. But the record leaves no doubt that Gibson was in contact with his counsel and that he agreed with their decision not to file what they believed would be an incomplete petition. Thus, Gibson has failed to prove that he needs to be transported for any additional neurological scans or that any additional testing would make a difference to the merits of his equitable tolling claim. Put differently, additional testing would only serve to needlessly delay the proceedings.

This Court should also reject Gibson's argument that it does not have jurisdiction over the district court's order. The Supreme Court has unequivocally held that the grant of transport orders issued under the All Writs Act are immediately appealable under the collateral-order doctrine. So has every other circuit to consider that question. This Court has jurisdiction, and it should proceed to the merits and hold that the district court abused its discretion by ordering Respondent to take a serial killer out of prison to perform useless medical scans.

## I.
### Binding precedent establishes that this Court has jurisdiction.

This Court has jurisdiction over the district court's grant of Gibson's motion for a transport order. Just three years ago, the Supreme Court held that the grant of a transport order issued under the All Writs Act is immediately appealable. *Shoop v. Twyford*, 596 U.S. 811, 817 n.1 (2022). As the Court explained, transportation orders issued under the All Writs Act satisfy the collateral-order doctrine because they conclusively require transportation, resolve an important question of state sovereignty conceptually distinct from the merits of the petitioner's underlying claims, and are entirely unreviewable by the time the case has gone to final judgment. *Id.* (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Penn. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985)).

In doing so, the Court recognized that "[e]very" circuit to have considered the question of whether it had jurisdiction over a challenge to the issuance of a

transport order under the All Writs Act had "held that such orders are immediately appealable." *Id.* (citing *Twyford v. Shoop*, 11 F.4th 518, 522 (6th Cir. 2021); *Jones v. Lilly*, 37 F.3d 964, 965–66 (3d Cir. 1994); *Jackson v. Vasquez*, 1 F.3d 885, 887–88 (9th Cir. 1993); *Ballard v. Spradley*, 557 F.2d 476, 479 (5th Cir. 1977)). And as to the issuance of a functionally equivalent order—a writ of habeas corpus *ad testificandum*—this Court has squarely held that the grant of an order requiring a warden to take a prisoner out of prison is immediately appealable. *Barnes v. Black*, 544 F.3d 807, 811–12 (7th Cir. 2008). It is beyond dispute that this Court has jurisdiction to review the transport order erroneously granted by the district court.

Gibson's attempts to avoid this well-established conclusion fail. He contends that the transport order in this capital habeas case, granted under the All Writs Act, is "materially different" than the transport order granted under the All Writs Act in *Twyford* (also a capital habeas case) because he does not intend to use the results of any additional neurological testing to support the merits of his habeas claims but instead to establish that he is entitled to equitable tolling (Doc. 15 at 11, 17–18).

But this Court's jurisdiction to review a challenge to the grant of a transport order is not dependent upon a petitioner's promised motive behind the transport, whether it be to establish grounds for equitable tolling or to support the merits of a claim for relief. Neither the Supreme Court in *Twyford* nor this Court in *Barnes* made the Court's jurisdiction contingent on such a distinction. Instead, the jurisdictional question hinges on whether the order being challenged is in the class

or category of orders that are immediately appealable under the collateral-order
doctrine. And the Supreme Court has unequivocally held that transport orders
issued under the All Writs Act in capital habeas cases fall within that class.
*Twyford*, 596 U.S. at 817 n.1.

The transport order is also immediately appealable under *Barnes*. The
*Barnes* Court held that the grant of an order to transport a prisoner out of prison is
immediately appealable because the costs and danger to the public could not be
rectified post-judgment. *Barnes*, 544 F.3d at 811. This Court went further to explain
that the denial of such an order was not immediately appealable because the costs
from that transport being denied could be rectified post-judgment. *Barnes*, 544 F.3d
at 811. Gibson attempts to use this distinction as a reason to set his case apart, but
that distinction is without a difference in Gibson's case because the district court
granted the transport order, which means that it is immediately appealable under
*Barnes*.

Rather than look to see if the order in this case fits within the category of
appealable orders under the collateral-order doctrine, Gibson erroneously analyzes
his individual order. He argues that the three considerations under the doctrine
should be applied individually to the order in this case (Doc. 15 at 9–15). But the
Supreme Court has held that when determining whether an interlocutory order is
immediately appealable, appellate courts "do not engage in an 'individualized
jurisdictional inquiry.'" *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 107
(2009) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 473 (1978)). Rather,

holdings under the collateral-order doctrine establish an "entire category to which a claim belongs" and can be immediately appealed. *Id.* (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

Unlike Gibson, this Court should not engage in a collateral-order-doctrine analysis for this individual order. It is instead merely required to determine whether the order in this case—a transport order issued under the All Writs Act in a capital habeas case—is in the class of orders that have been held to be immediately appealable. It is. *Twyford*, 596 U.S. at 817 n.1. That is the end of the inquiry. This Court has jurisdiction under the collateral-order doctrine.

Because he cannot avoid review of the transport order under the collateral-order doctrine, Gibson cursorily claims that Appellate Rule 22 is unconstitutional (Doc. 15 at 19–20). This claim is waived because Gibson has done nothing to develop it. A party can waive an argument on appeal by failing to sufficiently develop it. *See United States v. Butler*, 58 F.4th 364, 368 (7th Cir. 2023) (citing *United States v. Davis*, 29 F.4th 380, 385 n.2 (7th Cir. 2022); *United States v. Barr*, 960 F.3d 906, 916 (7th Cir. 2020)). Gibson's challenge to Appellate Rule 22 consists of three paragraphs, but two of them are just recitations of the relevant law, and the third consists of two conclusory sentences (Doc. 15 at 19–20). He makes no developed argument to support his extraordinary and novel assertion that the Supreme Court unconstitutionally exempted states from the certificate-of-appealability requirement. *See* Fed. R. App. P. 22(b)(3). Because of his waiver, this Court should not entertain whether Rule 22(b)(3) is constitutional.

Even so, his undeveloped complaint is meritless. This Court has long held that a state does not need a certificate of appealability to appeal a final order in a habeas case. *See United States ex rel. Calhoun v. Pate*, 341 F.2d 885, 887 (7th Cir. 1965) (citing *United States ex rel. Tillery v. Cavell*, 294 F.2d 12, 14 (3d Cir. 1961)) ("The requirement for securing certificate of probable cause by one appealing a final order in habeas … does not apply to a state or its representative[.]"). Other circuits have held the same. *See Hardcastle v. Horn*, 368 F.3d 246, 253–54 (3d Cir. 2004) (citing *Scarbrough v. Johnson*, 300 F.3d 302, 305 (3d Cir. 2002)); *Lurie v. Wittner*, 228 F.3d 113, 121 (2d Cir. 2000) (citing Fed. R. App. P. 22(b)(3); *Malchi v. Thaler*, 211 F.3d 953, 956 (5th Cir. 2000)); *Texas v. Graves*, 352 F.2d 514, 514 (5th Cir. 1965) (per curiam). This Court should continue to so hold in line with Appellate Rule 22(b)(3).

And Rule 22(b)(3) is not outside the scope of the Court's power to promulgate rules under the Rules Enabling Act. That Act permits the Court to "prescribe general rules of practice and procedure" but limits that power to the extent that rules adopted by the Court "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a), (b). Rule 22(b)(3)'s allowance of a state to appeal without meeting preconditions is not an abridgment, enlargement, or modification of any substantial right. All parties are entitled to an initial appeal from a final judgment, 28 U.S.C. § 1291, and therefore, Rule 22(b)(3) is an explicit statement that states can appeal in habeas. That would be true with or without Rule 22(b)(3), therefore, it is entirely unclear why Rule 22(b)(3) was beyond the Supreme Court's rulemaking

authority. Respondent did not need a certificate of appealability. This Court has jurisdiction, and it should proceed to the merits and hold that the district court abused its discretion by ordering Respondent to take a serial killer out of prison to perform useless medical scans.

## II.
### The district court abused its discretion by granting Gibson's motion for a transport order.

The district court unnecessarily delayed the resolution of Gibson's habeas proceedings when it ordered Respondent to transport Gibson—a thrice convicted murderer—out of prison and to a hospital located hours away to perform needless testing. The district court abused its discretion when it issued the transport order in this case for at least three reasons. First, if Gibson were permitted to present new evidence in support of his request for equitable tolling, additional neurological scans would not be "necessary or appropriate in aid" of the district court's determination of whether he should be entitled to file a late petition, which is what *Twyford* holds.

Gibson's argument to the contrary is based on a misunderstanding of the holding in *Twyford*. Twyford was convicted of aggravated murder, kidnapping, robbery, and sentenced to death. *Twyford*, 596 U.S. at 814–15. Two decades later, Twyford filed a petition for habeas corpus relief, and the State moved to dismiss his petition arguing that Twyford had procedurally defaulted his claims by failing to present them in state court. *Id.* The district court dismissed the bulk of his claims but allowed a few, including his ineffective-assistance-of-counsel claims, to proceed. *Id.* at 816.

As his case was pending, Twyford moved the district court to issue a transport order under the All Writs Act compelling the State to transport him to a hospital for "the investigation, presentation, and development of claims." *Id.* He explained that additional neurological testing would support his underlying ineffective-assistance-of-counsel claims. *Id.* He also argued that the testing "could plausibly lead to the development of evidence and materials" that would help him rebut the State's argument that he had procedurally defaulted his claims. *Id.*[1] The district court granted his motion. *Id.* at 816–17.

The Supreme Court reversed. *Id.* at 814. The Court determined that it would cause unnecessary delay to transport Twyford for neurological testing when the results of that testing would be inadmissible in support of his underlying ineffective-assistance-of-counsel claims. *Id.* at 822–23. And the Court further found that it would ultimately "serve no purpose" to allow Twyford to spend additional time and resources to develop evidence to attempt to circumvent procedural default when any new evidence he might develop would not be admissible beyond that stage of the litigation regardless of whether the district court excused his procedural default. *Id.* at 823.

The same is true here. Gibson seeks to spend additional time and resources to rebut the State's argument that his petition for a writ of habeas corpus is barred

---

[1] A federal court may not review a claim a habeas petitioner failed to adequately present to the state courts, unless he shows "cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation." *See Davila v. Davis*, 582 U.S. 521, 528 (2017).

by the statute of limitations.[2] But even if additional neurological scans would help Gibson show that he is entitled to equitable tolling to resurrect his late petition, he has not and cannot show that he meets the standards for admitting new merits evidence under 28 U.S.C. § 2254(e)(2). In fact, Gibson acknowledges that any additional evidence he does develop from further scans would not be "used in the merits consideration of his habeas claims" (Doc. 15 at 23). That concession is fatal to his claim because it shows that he cannot, and has no intention of, satisfying the requirements of § 2254(e)(2).

Thus, the district court should have denied Gibson's request for a transport order because, as the Court explained in *Twyford*, it serves no purpose to allow Gibson to delay the proceedings to fish for additional evidence in the hope that he can establish that he entitled to equitable tolling when that evidence will be of no use to him or the district court going forward. Thus, despite his argument to the contrary, *Twyford* is directly on point, applies to this case, and establishes that this Court not only has jurisdiction over the appeal but also that it must reverse the district court's order.

Second, as extensively argued in Respondent's opening brief and in the district court, Gibson's mental health in the limitations period is mostly irrelevant

---

[2] The Court in *Twyford* did not make a distinction between types of complete procedural bars whether it be procedural default for failure to fairly present the claim to the state courts or because a petition is barred by the statute of limitations. *Twyford*, 596 U.S. at 823. The Court did not need to make such a distinction, because its holding applied equally to new evidence being introduced for "*any* purpose." *Id.* (citing *Shinn v. Ramirez*, 596 U.S. 366, 389 (2022)) (emphasis added).

because he was represented by counsel. Counsel spent hundreds of hours on Gibson's case and formulated a strategy specific to the timing of the filing of a habeas petition (SA 106–21, 131–40, 144–47, 122–26). They decided that it would be better to "litigate procedural info for 5 years" rather than file a petition they believed would be incomplete and would cause the abandonment of later-developed claims—a strategy that has worked to delay resolution of Gibson's meritless habeas claims for more than five years since counsel made that statement and has now led to the delay-laden grant of an evidentiary hearing, which will entail full discovery, hiring of multiple experts, and days of the district court's time to arrive at a judgment that will only resolve the equitable-tolling question (R. 62-30 at 6; R. 62-38 at 3–4). The formulation and execution of a considered strategy is a far cry from abandonment as a matter of law, and given that is the case, Gibson's mental health is almost entirely irrelevant—he was not even required to be competent to litigate when represented by counsel. *Ryan v. Gonzales*, 568 U.S. 57, 76–77 (2013). Given that Gibson was represented by experienced and active habeas counsel, he does not need to collect irrelevant evidence about his brain's current state of health in a futile attempt to obtain equitable tolling.

Third, to the extent that Gibson's cognitive abilities are relevant at all, they would only be relevant to whether he could have supervised his counsel's conduct, approved or disapproved of their strategy, and filed a petition on his own if he did indeed disagree. But the record conclusively shows that Gibson was in contact with his counsel (*see* SA 106–21, 131–39, 144–47), and that he agreed with their decision

not to file what they considered to be an incomplete petition (R. 62-44 at 2). At bottom, there is little to no support in the record to establish that Gibson's cognitive abilities impaired his ability to pursue his claims, supervise his attorneys, or that he would have been unable to file a petition on his own behalf had he disagreed with their decision to wait.

Gibson's reliance on *Christeson v. Roper*, 574 U.S. 373 (2015), and *Schmid v. McCauley*, 825 F.3d 348 (7th Cir. 2016), do not show that further development of the state of Gibson's brain currently is necessary. *Christeson* simply held that "serious" attorney misconduct could justify tolling, and that the substitution of counsel was appropriate when the attorneys who would have to make that case would necessarily have to denigrate their own performance. *Christeson*, 574 U.S. at 378. Notably also in *Christeson*, that petitioner's counsel did not meet with the petitioner until six weeks after his petition was due—a far cry from the situation in this case. *Id.* at 374. And *Schmid* did not have federal habeas counsel at all—the counsel she was provided in that case was in state collateral proceedings—and state counsel actually put a real obstacle in the petitioner's way by delaying turning over "legal papers that she needed," *Schmid*, 825 F.3d at 349, which can be a valid reason to grant equitable tolling. *See Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014). This case does not feature the degree of poor attorney performance in either of the cases cited by Gibson.

For those reasons, Gibson failed to prove that he needed to be transported for additional neurological scans because any additional neurological testing, conducted

five years after the statute of limitations has passed, would not make a difference to the merits of his equitable-tolling claim. As such, the district court abused its discretion, and the transport order should be reversed. All of Gibson's reasons to oppose that conclusion are wrong.

Gibson claims Respondent is "wrong on the law" because the equitable-tolling claim is not yet ripe and his allegations are sufficient to justify further fact-finding (Doc. 15 at 23–22). But Respondent's arguments against the transport order are essentially identical to Respondent's arguments against equitable tolling: Gibson was represented by counsel who did not abandon him and who did not commit egregious attorney misconduct amounting to abandonment. None of the facts supporting that argument are in dispute. What is disputed is the legal conclusion that should result from consideration of those facts. But Respondent is not "wrong on the law" because he has raised the same arguments against delay, whether that delay is because of a transport order, evidentiary hearing, or the grant of equitable tolling.

Next, Gibson is facially correct when he notes that the equitable-tolling decision depends on the facts and circumstances that a prisoner may have faced when attempting to file a timely petition (Doc. 15 at 24). And Respondent has not overlooked all of the facts and circumstances surrounding the late filing of Gibson's petition. Not only did Gibson have counsel who formulated and executed a strategy to litigate the equitable tolling question for five years instead of filing what they thought would be an inadequate petition, Gibson, despite whatever mental-health

problems he may have been facing, was in communication with his attorneys, podcasters, and students in lectures; was communicating with a multitude of persons around the country through his tablet; and signed off on his counsel's strategy (R. 62-30 at 7; R. 62-44; R. 79-35; R. 79-37; SA 106–21, 131–40, 144–47). Thus, full consideration of what occurred during the limitations period, including Gibson's ability to communicate and concur with his attorneys' strategy, shows that he will not be able to prove entitlement to equitable tolling, and the issuance of the transport order was an abuse of discretion.

As for Gibson's third assignment of error, Respondent does not and could not deny that the *Holland* Court cited examples of counsel's behavior short of abandonment as potential misconduct that could justify equitable tolling. Gibson acknowledges that there are cases where non-abandonment can rise to equitable tolling but does little more than write off as "irrelevant" and "not analogous" those cases in which petitioners' attorneys exhibited fairly egregious misconduct falling short of behavior justifying tolling (Doc. 15 at 25). Those cases—*Conner v. Reagle*, 82 F.4th 542 (7th Cir. 2023); *Ademiju v. United States*, 999 F.3d 474 (7th Cir. 2021); *Lombardo v. United States*, 860 F.3d 547 (7th Cir. 2017); *Obriecht v. Foster*, 727 F.3d 744 (7th Cir. 2013)—all feature attorneys inexcusably neglecting or actively misadvising petitioners and directly causing the late filing of a habeas petition. And in none of those cases did the petitioner receive equitable tolling.

The cases *Holland* highlighted that featured misconduct short of abandonment but that could justify equitable tolling show a level of misbehavior

and near- to total misrepresentations that are simply not present in this case. The attorney in *Baldayaque v. United States*, 338 F.3d 145, 148–49, 152 (2d Cir. 2003), took the petitioner's money, did not file a timely petition, and misrepresented to the petitioner's family that he was just waiting on a court date. The attorney in *Spitsyn v. Moore*, 345 F.3d 796, 798–801 (9th Cir. 2003), was retained to file a petition, failed to do so, held onto the petitioner's case file "until well after the date the petition was due," and was ultimately reprimanded by the state bar. And the attorney in *Calderon v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 128 F.3d 1283, 1289 (9th Cir. 1997), withdrew from the case to take another job "and much of the work product he left behind was unusable by replacement counsel."

Here, Gibson's own evidence proved that his counsel deliberated upon and executed a strategy relating to the timing of the filing of a habeas petition. He has identified no point in which his counsel made misrepresentations to him or was neglectful of the case. In fact, they spoke to Gibson repeatedly within the limitations period, and Gibson affirmatively signed off on their strategy (R. 62-44 at 2; R. 79-37 at 30–31; SA 106–21, 131–40, 144–47). When those acts are compared to the acts of the attorneys in the above-cited cases, the strategizing and risk assessment of Murray and Benza cannot be grounds for equitable tolling as a matter of law. This was not behavior coming anywhere close to the mis- or malfeasance described by the cases cited by the Court in *Holland*.

Gibson also claims that his mental health is relevant to the diligence requirement for equitable tolling and cites three cases to support that proposition

(Doc. 15 at 27–28). In none of those cases was the petitioner represented by counsel (Doc. 15 at 28). *See Conroy v. Thompson*, 929 F.3d 818, 819–20 (7th Cir. 2019) ("In 2016, Conroy filed a pro se petition in federal court under 28 U.S.C. § 2254[.]"); *Justus v. Clarke*, 78 F.4th 97, 103 (4th Cir. 2023) ("Justus then filed a pro se 28 U.S.C. § 2254 petition[.]"); *Bills v. Clark*, 628 F.3d 1092, 1094 (9th Cir. 2010) (appointing counsel *after* the petitioner filed his petition pro se). Gibson fails to recognize this material distinction between those cases and his. And it is entirely unexplained in his brief how his mental health relates to his claim that he should be granted 100 days of equitable tolling for the time it took to recruit federal habeas counsel (Doc. 15 at 28), or how 100 days of equitable tolling, if granted, would make Gibson's petition timely under the one-year statute of limitations.

Finally, Gibson argues that requiring petitioners to prove they were abandoned by counsel before a transport order could be issued would result in piecemeal litigation on the logic that it would be "piecemeal" for a district court to have to consider the necessity and relevance of a transport order before granting a motion for such an order (Doc. 15 at 28–29). Putting aside the basic reality that there are considerations that a court should make before granting a party's motion and that prerequisite considerations do not result in piecemeal litigation, the Supreme Court has explicitly required such considerations to be made before granting transport orders for brain scans in capital habeas cases. *See Twyford*, 596 U.S. at 822–24 (considering whether Twyford would be able to "clear the bar in § 2254(e)(2) for expanding the state court record," in support of his underlying claims

for habeas relief or whether it would "serve no purpose" to allow Twyford to develop additional evidence neither he nor the district court could consider going forward).

Unable to defend the district court's order on the law, Gibson attempts to concoct factual disagreements or conflicts (Doc. 15 at 29–34). When it comes to what actions counsel take and why they took them, the parties have no conflict. In the single paragraph in which Gibson attempts to show a factual conflict, he identifies no facts that the parties actually contest. The question of abandonment in this case relies not on whether one fact or another is true—mostly because the evidence Respondent relies upon is that supplied by Gibson—but whether those facts rise to abandonment, which is a legal question. *Cf. United States v. Grasser*, 312 F.3d 336, 339 (7th Cir. 2002) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996); *United States v. Mojica*, 185 F.3d 780, 791 (7th Cir. 1999)) ("[B]ecause the facts are undisputed, the trial judge's conclusions, including interpretation of the guidelines, are reviewed de novo"). In fact, this Court need not look outside Gibson's evidence to hold that Gibson's counsel did not abandon him.[3]

---

[3] Of course, other record evidence supports the conclusion that counsel did not abandon Gibson, which includes the district court's Criminal Justice Act vouchers (SA 106–26, 131–39, 144–50). Gibson complains that these were "never in front of the District Court" (Doc. 15 at 31). That is untrue: Those vouchers were provided to the parties by the district court, which means that they were before that court (SA 93). They were signed by district-court judges (SA 95, 99, 103, 106, 122, 127, 129, 131, 141, 144, 148). And they were filed in the cause number relating to this case that preceded the present district-court cause number (*see* SA 93) (referring to cause number 4:20-cv-100), which was created to facilitate pre-petition representation and proceedings. Gibson does not at all explain how documents signed by a district-court judge are not before a district court.

Unable to prevail on either the law or the facts, Gibson then unpersuasively claims that Respondent has waived certain arguments (Doc. 15 at 34–38). He contends that Respondent did not argue that counsel did not abandon Gibson (Doc. 15 at 35–36). That contention is wholly rebutted by the record (R. 79 at 42–45; R. 85 at 6). In fact, Respondent's refrain throughout this litigation has been that Gibson is not entitled to equitable tolling because he was represented by counsel (*see generally* R. 79; R. 85).

Gibson rests his waiver argument on the fact that, in one document, Respondent did not reiterate, in full, his arguments against equitable tolling and against transporting a serial killer out of a prison for pointless medical testing (Doc. 15 at 36–38). The purpose of the waiver rule is to ensure that a district court has the chance and a sufficient record upon which to adjudicate a party's claims. *See Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Loc. 374*, 175 F.3d 526, 529 (7th Cir. 1999) (citing *United State v. Payne*, 102 F.3d 289, 293 (7th Cir. 1996); *United States v. Andreas*, 150 F.3d 766, 769–70 (7th Cir. 1998); *Murphy v. Keystone Steele & Wire Co.*, 61 F.3d 560, 568 n.4 (7th Cir. 1995)) (providing that the waiver rule is intended to guarantee that the district court has the first opportunity to pass on the appellant's theory; avoid usurping the district court's proper role by refusing to consider issues raised for the first time on appeal that require the factfinding abilities of the district judge; and ensure an adequate record to review on appeal).

It cannot be reasonably argued here that the district court was unaware of Respondent's position why Gibson is not entitled to equitable tolling and should not be out in the public after being convicted of murdering and mutilating three women (*see* R. 85). Because Respondent has been steadfast in his position about the needless prolonging of this habeas case through the grant of an evidentiary hearing and a transport order to resolve the issue of equitable tolling, this Court cannot hold that he has waived his arguments. This Court should reverse the district court's grant of Gibson's motion for a transport order.

## CONCLUSION

The grant of an order to transport Gibson to a hospital for a brain scan should be reversed.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General

*/s/ Tyler Banks*
Tyler Banks
Section Chief, Capital and Habeas Litigation

*/s/ Courtney Staton*
Courtney Staton
Supervising Deputy Attorney General

Dated: December 17, 2025

*Attorneys for Respondent-Appellant*

# FED. R. APP. P. 32(g) WORD COUNT CERTIFICATE

1. Pursuant to Fed. R. App. P. 32(g), the undersigned counsel for the appellee certifies that this brief complies with the type-volume limitations of Circuit Rule 32(c) because the brief contains 4,963 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook typeface, font size 12 for the text and font size 12 for the footnotes. *See* Cir. R. 32(b).

> */s/ Tyler Banks*
> Tyler Banks
> Section Chief

# CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2025, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that the appellee was served by counsel through the CM/ECF system on December 17, 2025.

> */s/ Tyler Banks*
> Tyler Banks
> Section Chief

OFFICE OF INDIANA ATTORNEY GENERAL TODD ROKITA
302 W. Washington Street
Indiana Government Center-Fifth Floor
Indianapolis, IN 46204
Tyler.Banks@atg.in.gov